B/O

FILED
CLERK, U.S. DISTRICT COURT

MAY 19 2020

CENTRAL DISTRICT OF CALIFORNIA
BY: _____RS_____ DEPUTY

JOHN B. BULGOZDY (Cal. Bar No. 219897)
Email: bulgozdyj@sec.gov
DAVID S. BROWN (Cal. Bar No. 134569)
Email: browndav@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 5:20-CV-01056-PA-SHKx |
| Plaintiff, | **COMPLAINT** |
| vs. | **(FILED UNDER SEAL)** |
| PAUL HORTON SMITH, SR.; NORTHSTAR COMMUNICATIONS, LLC; PLANNING SERVICES, INC.; AND EGATE, LLC, | |
| Defendants. | |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this action pursuant to Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a), and Sections 209(d), 209(e)(1) and 214 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-9(d), 80b-9(e)(1) & 80b-14.

2.     Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

3.     Venue is proper in this district pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), and Section 214 of the Advisers Act, 15 U.S.C. § 80b-14, because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district.  In addition, venue is proper in this district because Defendant Paul Horton Smith, Sr. resides in this district, and Defendants Northstar Communications, LLC; eGate, LLC; and Planning Services, Inc. are based in this district.

## SUMMARY

4.     Defendants are conducting an ongoing Ponzi scheme targeting senior citizens, and engaging in other fraudulent conduct, in violation of the federal securities laws.  From at least January 2018 through the present, Paul Horton Smith, Sr. ("Smith") offered and sold securities in his company, Northstar Communications, LLC ("Northstar"), in conjunction with his state-registered investment advisory firm, eGate, LLC ("eGate"), and his insurance and estate planning company, Planning Services, Inc. ("Planning Services").  Smith and Northstar assured investors that their principal would be safe and secure invested in purported "private annuity contracts," and they promised investors guaranteed annual interest payments between 3 percent

and 10.5 percent.  In reality, Smith's and Northstar have not invested any investor funds in any securities, their representations to investors were false and misleading, and omitted material information.

5.     From January 2018 through April 2020, Smith sold more than $5.6 million of fictitious Northstar securities to at least 35 investors, and paid out over $5.3 million to Northstar investors as interest payments or principal return.  The payments to investors came almost exclusively from funds invested by other investors in Northstar, in a classic Ponzi scheme.  Defendants also misused at least $256,000 of Northstar investor funds by comingling those funds among bank accounts of Northstar, eGate and Planning Services that Smith controls.  Defendants further misused at least $175,000 of Northstar investor funds by settling investor lawsuits brought against the Defendants by defrauded investors.

6.     Smith perpetrated this fraud by holding himself out as a trusted fiduciary through his position as an investment adviser with eGate, an investment advisory firm, and Planning Services, a licensed insurance agent.  Smith touts himself to potential clients as a "veteran of the financial services industry" with years of experience, at free financial workshops and free meal seminars.  Through his promotion of advisory, tax, and financial planning services, Smith created a trusting relationship he then used to solicit investors to purchase securities issued by Northstar.  As Smith told investors during a February 2020 workshop, "your pockets aren't going to get picked, okay? . . . We are all fiduciaries."  In fact, and in breach of Smith's fiduciary duty, clients' pockets were getting picked clean through his Ponzi scheme.

7.     The Defendants' fraud is ongoing.  Since the issuance of the COVID-19 stay-at-home orders, Smith has continued to solicit investors by telephone and through meetings in his office or in investors' homes.

8.     By engaging in this conduct, Defendants have violated and continue to violate the antifraud provisions of Section 10(b) of the Exchange Act, 15 U.S.C. §

2

78j(b), and Rule 10b-5 thereunder, 17 C.F.R. 240.10b-5; Section 17(a) of the Securities Act, 15 U.S.C. § 15 U.S.C. § 77q(a); and Sections 206(1) and (2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) and 80b-6(2).  The SEC seeks a finding that Defendants violated the federal securities laws, the imposition of permanent injunctions, disgorgement with prejudgment interest, and civil penalties.

## DEFENDANTS

9.      Paul Horton Smith, Sr., age 56, is a resident of Moreno Valley, California.  Smith is a California-registered investment adviser representative associated with Defendant eGate.  Smith is a California-licensed insurance agent and holds a Series 65 securities license.  Smith was associated with broker-dealers registered with the SEC from 1993-through 2000, and investment advisers registered with the SEC from 2007-2011.  Smith has a disciplinary history consisting of: (1) a July 27, 2000 Cease and Desist Order issued by the Idaho Department of Finance that barred Smith him from offering and selling unregistered securities, soliciting clients when he was not registered, and committing fraud, and ordered him to pay penalties of $1,000; and (2) a November 13, 2008 Agreement and Order issued by the Idaho Department of Finance in which Smith (a) agreed not to apply for at least ten years to register in Idaho to sell securities or provide investment advisory services, (b) agreed not to sell securities or provide advisory services in Idaho, unless he was registered, for ten years, and (c) was ordered to pay penalties and costs of $3,000.  Smith is not currently registered with the SEC in any capacity.  On February 18, 2020, the California Department of Financial Oversight issued a notice of intention to bar Smith from the securities industry.

10.     Northstar Communications, LLC is a California limited liability company based in Riverside, California, and was incorporated on April 13, 2000.  Smith is the managing and sole member of Northstar.  Northstar purports to be a private annuity contracts company.  Northstar is not licensed by the State of California as a bank or trust company.  Northstar and its securities are not registered

with the SEC in any capacity.

11.     Planning Services, Inc. is a California corporation based in Riverside, California, and was incorporated on May 30, 2001.  Smith is the sole officer and director of Planning Services.  Planning Services purports to provide a variety of planning services to pre-retirees and retirees, including investment, tax, and income planning.  It is a California-licensed insurance agent authorized to sell life, accident, and health insurance policies, and was until February 2020 authorized to sell variable annuities.  Planning Services is not registered with the SEC in any capacity.

12.     eGate, LLC is a California limited liability company based in Riverside, California, and was incorporated on April 22, 2004.  Smith is the president and control person of eGate.  From 2007 to the present, eGate has been a California-registered investment adviser.  According to eGate's Form ADV dated March 18, 2020, eGate has over $8.2 million in assets under management.  On February 18, 2020, the California Department of Business Oversight filed a notice of intention to revoke eGate's certificate as an investment adviser.  eGate is not registered with the SEC in any capacity.

## DEFENDANTS' FRAUDULENT ACTIONS

**A.     Defendants' Solicitation of Investors**

13.     Smith uses eGate and Planning Services, two entities under his common control, to solicit investors to whom he then offers and sells securities issued by Northstar that they call "private annuity contracts."

14.     Smith runs Northstar, eGate, and Planning Services from his office in Riverside, California.

15.     Smith is the sole signatory for bank and brokerage accounts held by Northstar, eGate, and Planning Services.

16.     Smith solicits prospective investors using eGate and Planning Services as marketing tools.  Smith holds himself out as an experienced financial professional and markets investment advisory, insurance, and tax services.  At various times,

Smith claims to be a "veteran of the financial services industry," a "chartered senior financial planner," and a "certified estate adviser."  Smith portrays himself as someone who wants to demonstrate his "value" to investors and earn their trust, and he tells investors he is a fiduciary who has "to do what's in your best interest."  Once Smith gains an investor's trust, he then offers and sells them securities issued by Northstar, which in reality is a Ponzi scheme.

17.     Smith targets his marketing to older adults and retirees living in Riverside and San Bernardino counties.

18.     Smith solicits investors through financial workshops, free-meal seminars, investor events, and one-on-one meetings.

**1.      Financial workshops**

19.     Smith advertises free financial workshops on Planning Services' website, on Facebook, and using flyers sent through the U.S. Postal Service.  Smith sent confirming letters to people who signed up to attend a workshop held at a local college on February 25 and 26, 2020, and represented that hosting workshops "is the first step we use to demonstrate our value to you.  Know this, this workshop is not a sales pitch in disguise. . . . We find that after attending the workshop, many people choose to meet with us to explore potential solutions."

20.     At the workshops, Smith makes a PowerPoint presentation, usually on the topics of individual retirement accounts ("IRAs") and estate planning.  At a recent workshop held in February 2020 attended by approximately 40 people, Smith represented:  "I have financial licenses . . . Your pockets aren't going to get picked, okay? . . . We are all fiduciaries. . . . We have to do what is in your best interest."  At that workshop, Smith encouraged attendees to make an appointment with him for a "complimentary" meeting to discuss "our comprehensive approach" to wealth management including devising an "income plan."

21.     Smith had scheduled workshops to take place after February 2020, prior to the issuance of COVID-19 stay-at-home orders.

## 2.    Free-meal seminars

22.    Smith advertises free-meal seminars using direct-mail companies to publicize the seminars.  The seminars are held in a hotel or restaurant, where attendees are treated to free meals and sometimes live entertainment.  Recent promotional materials for the free-meal seminars have included statements such as: "Educational Estate Planning Event . . . Complimentary Meal! . . . Be our Guest!  No cost.  No obligation.  Very Informative!" and "You Are Invited to an Exclusive Special Event . . . By Attending, You Will Learn . . . Are Dividend-Paying Stocks Right For Your RETIREMENT Plan? . . . . The 7% PERSONAL PENSION PLAN . . . DEFENSIVE STRATEGIES During Turbulent Times . . . How To PROTECT YOUR LIFE SAVINGS From an Impending Market Crash."

23.    Similar to the workshops, Smith makes a PowerPoint presentation and touts his experience and the financial services he can provide.

24.    The free-meal seminars typically attract about 25 people, although attendance varies.  Smith encourages attendees to arrange follow up meetings with him.

25.    Smith had free-meal seminars scheduled to take place in April 2020, which were cancelled due to COVID-19 stay-at-home orders.

## 3.    Investor Events

26.    Smith holds "special events" for investors and prospective investors, such as an "Annual Client Appreciation Luncheon" and an annual "Holiday Luncheon."

27.    Smith's 2019 Holiday Luncheon attracted between 200 and 230 attendees.

28.    Smith encourages attendees at the events to complete contact forms, arrange follow up meetings with him, and provide the names of other possible clients, or referrals.

29.    Smith was planning a "comedy night" in May 2020 at a local theater,

which was cancelled because of the COVID-19 stay-at-home orders.

**B.    The Fraudulent Northstar Offering**

30.    Smith marketed Northstar's "private annuity contracts" as fixed-rate securities with guaranteed annual rates between 3 percent and 10.5 percent, and assurances that investors' principal is safe and secure.  Smith tells investors that they will receive higher returns from Northstar securities than a bank or brokerage account can provide.

31.    Smith and Northstar offered investors two choices on how investment interest was paid:  (a) a monthly interest payment for life, or (b) monthly interest payments reinvested for a compounded return.

32.    Smith and Northstar represented to investors that any money remaining after their death would be paid to the investor's designated beneficiary.

33.    From January 2018 through April 2020, Smith and Northstar sold more than $5.6 million in securities to approximately 35 investors.

34.    Investors purchased the Northstar securities by personal check, cashier's check, wire transfer, or through self-directed IRAs.

35.    Investors' funds were pooled in Northstar's bank account, which was controlled by Smith.

36.    Smith and Northstar offered and sold securities in two ways.  Some investors were asked to complete an account application, which asked for the name of the owner of the contract and the beneficiary, and specified the dollar amount invested and the rate of interest.  Once completed and signed, Smith provided these investors with a copy of the "private annuity contract" as proof of their investment, which confirmed the date and amount of the investment, the amount of the "guaranteed interest rate," how long the interest rate guarantee would last, and the frequency of periodic interest payments.  The "private annuity contract" also identified its term, from one to ten years, but also provided for automatic renewal.

37.    Smith solicited other investors to purchase securities issued by Northstar

without completing the application or providing a copy of the "private annuity contract." These investors transferred their investment funds to Northstar, and then subsequently received monthly statements from Northstar showing the balance of the investment and the interest.

38. The "private annuity contracts" offered and sold by Smith and Northstar are securities in the form of investment contracts. Investors purchased securities issued by Northstar for cash, and investors' funds were pooled in Northstar's bank account. Investors had a reasonable expectation of profits from their investment derived from the efforts of Smith and Northstar. Northstar's investors are entirely passive and Smith did not provide investors with any control over the enterprise. Smith and Northstar sold the "private annuity contracts" as an opportunity for financial profit and security provided solely from the efforts of Northstar.

39. Smith and Northstar used means and instrumentalities of interstate commerce to facilitate the offer and sale of securities issued by Northstar.

**1. Northstar is a Ponzi Scheme**

40. Northstar's bank records for the period from January 2018 to April 2020 show investor deposits of approximately $5.6 million into its bank account, representing approximately 95% of total deposits during that period. During the same period, over $5.3 million was paid to investors as interest payments or return of principal, or approximately 89% of the total disbursements from the Northstar account.

41. Investor funds were not transferred to brokerage accounts in the investors' names. While Northstar has accounts at brokerage firms, those accounts contain minimal or no funds or securities.

42. Investor funds were not transferred to investments or assets owned or controlled by Northstar, Smith, eGate, or Planning Services that would generate revenue or produce income to pay any investor returns. During the period in question, the bank records do not show any income or revenue from investments or

assets sufficient to fund the payments made to investors.

43.     Based upon the deposits and payments from Northstar's bank accounts, deposits of investor funds were almost the exclusive source of payments made to investors in Northstar, in a classic Ponzi scheme fashion.

**2.     Smith Used New Investor Funds to Settle Investor Lawsuits and Commingled Funds**

44.     Smith and Northstar used new investor money to settle investor lawsuits and satisfy investor demands for principal.

45.     Between 2018 and 2020, Smith and Northstar used at least $175,000 of new investor funds to settle investor lawsuits.  For example, in February 2020, an elderly investor filed a lawsuit seeking return of his investment in Northstar.  Smith settled the lawsuit and agreed to make periodic payments beginning with an initial payment of $80,000.  Bank records show that at the time of the agreement, Northstar did not have sufficient funds to make the payment.  Shortly after the agreement was signed, Northstar deposited $191,000 from a new investor, and 18 days later made the initial payment of $80,000 pursuant to the settlement agreement.  During that 18-day period, there were no other significant deposits into Northstar's bank account.

46.     At least $256,000 of investor funds deposited into Northstar's bank account was commingled with money held in other accounts Smith controls, including at least $231,000 to Planning Services and at least $15,000 to eGate.  In many cases, when Planning Services had insufficient funds to pay expenses, funds were routinely transferred from Northstar's account to pay monthly expenses.

47.     Some of the investor funds transferred from Northstar to Planning Services were used to pay Smith's personal expenses, such as his mortgage and credit cards.

48.     When there were insufficient funds in the Northstar account to pay interest or principal to investors, available funds in the Planning Services account were transferred to Northstar to pay investors.  For the period from January through

April 2020, a net of about $78,545 was transferred from Planning Services' bank account to Northstar's bank account, and the funds were then used to make payments to Northstar investors.

### 3.    Misrepresentations and Omissions

49.    Smith and Northstar misrepresented to investors that the "private annuity contracts" paid a guaranteed interest rate and investors' funds were safe and secure. In fact, Smith and Northstar were operating a Ponzi scheme, were not making any investments that would provide the revenue to make interest payments or repay principal, and were using funds from new investors to make payments of interest and principal to prior investors.

50.    Smith and Northstar omitted material information, including that they were using investors' funds to make Ponzi payments, they were not making any investments with investors' funds that would provide sufficient revenue to pay interest and repay principal, and that they were just using new investors' funds to make Ponzi payments to investors.

51.    Smith and Northstar omitted material information that they were using new investor funds to make payments to settle lawsuits and claims made by earlier investors.  This misuse of investor funds was not disclosed to investors.

52.    From January 2018 through April 2020, Smith and Northstar sent monthly statements to investors which included a statement of the beginning monthly balance, a statement of monthly interest earned, and a statement of the amount of the ending balance for the month, which was represented as the "total account value."

53.    In fact, because investors' funds were not generating any revenue and were being used to make Ponzi payments, the monthly statements misrepresented the value of the accounts and omitted material information concerning the investors' funds and returns.

54.    Smith omitted material information about his disciplinary history in his communications with investors touting his experience and role as a fiduciary.  For

example, at a workshop on February 25, 2020 at a local college, Smith represented: "Now, we're a fiduciary.  What's a fiduciary?  That's somebody who is supposed to put your best interest first.  Because of the licenses we have . . . I have financial licenses, which I'll explain why I have them in a moment – you don't have to worry about that.  Your pockets are not going to be picked, okay?"  Less than a week prior to that workshop, on February 19, 2020, Smith was served by the California Department of Business Oversight with a notice of intention to revoke eGate's investment adviser certificate and bar Smith from the securities industry in California.

55.     Smith did not disclose material information concerning his regulatory history with Idaho securities regulators, even though that information was still relevant as evidenced by Smith's answers on eGate's March 18, 2020 Form ADV, which answers "yes" to a series of questions concerning his prior disciplinary history.

56.     During the early months of 2020, Smith represented to investors that their money is safe and secure, but currently illiquid.

57.     In February or March 2020, Smith referred at least one investor by phone to the balances shown on the monthly statement as evidence that the investor's money was secure.

58.     Smith's representations to investors that their funds are safe and secure are false and misleading, and omit material information that the investors' funds have been used to make Ponzi payments to investors, and that there are no assets available to pay the investors' principal or interest, except new funds Smith raises from investors.

**4.     Disciplinary Action by the California Securities Regulator**

59.     On or about February 19, 2020, the CDBO served Smith and eGate with a Notice of Intention to issue orders revoking eGate's investment adviser certificate and barring Smith from the securities industry in California ("Notice of Intention").  .

60.     The Notice of Intention includes four causes of action:  (1) that Smith forged client signatures; (2) breach of fiduciary duties guaranteeing a client a specific

result and failing to follow client instructions, (3) failure to maintain books and records, and (4) false statement to the Commissioner.

**C.  Defendants Engaged in a Scheme to Defraud**

61.  Smith, Northstar, Planning Services, and eGate have engaged in a scheme to defraud investors.  Smith used the services offered by Planning Services and eGate to entice clients to rely on his services and advice.  Smith used his ownership and control of eGate, a registered investment adviser, to hold himself out as a "fiduciary."  Smith used Planning Services to promote himself and his purported expertise in the financial industry.  Smith used his association with both eGate and Planning Services to hold financial workshops, free-meal seminars, and investor events to create the false appearance that he was operating a trustworthy business.  Once investors and clients were enticed by this false appearance, Smith offered and sold investors securities in the Northstar Ponzi scheme.

62.  Planning Services and eGate were beneficiaries of the fraudulent scheme because funds were transferred from Northstar's bank account to Planning Services and eGate to support their business operations as needed.  From January 2018 to July 2018, the flow of funds was one way with funds sent from Northstar to Planning Services.  From August 2018 forward, the flow of funds went both ways, with funds moving back and forth between these entities as needed.

63.  Planning Services provided funds to Northstar to help perpetuate the fraud.  From time to time, when Northstar had insufficient funds to make interest or other payments to investors and funds were in the Planning Services account, Smith transferred funds from Planning Services to Northstar, and then to investors, to perpetuate the scheme and the illusion that Northstar was generating sufficient revenue to make interest and principal payments.

**D.  Smith and eGate Breached Their Fiduciary Duty to Advisory Clients**

64.  Smith is a state-registered investment adviser representative for eGate, and Smith acted as an investment adviser to clients who purchased securities issued

by Northstar.

65.     As an investment adviser, Smith and eGate had a fiduciary duty to their clients to provide investment advice for the benefit of their clients.

66.     When Smith and eGate provide investment advice to their clients, Smith and eGate received compensation from their clients for their investment advice, either as a percentage of assets under management, hourly fees, or fixed fees.  Smith and eGate advised clients to invest in Northstar.

67.     Smith also held himself out as Northstar's representative, who could answer questions about the Northstar investment.

68.     When Smith and eGate advised clients to invest in Northstar, in view of Smith's knowledge that Northstar was not making any investments with money provided by investors through the purchase of securities, Smith and eGate breached their fiduciary duty to their clients by failing to inform clients that Northstar was a Ponzi scheme, by failing to inform clients that investor funds were being used to pay settlements for lawsuits, and by failing to inform clients that funds in the Northstar bank account were commingled.

69.     On eGate's Form ADV, dated March 18, 2020, Smith and eGate answered "No" to Item 6.B.3, which asked:  "Do you sell products or provide services other than investment advice to your advisory clients."  In addition, eGate's Form ADV does not identify Northstar as an affiliate of Smith, or even include the word "Northstar."

**E.      Defendants Acted With a High Level of Scienter, or in the Alternative, were Negligent**

70.     Smith acted with a high level of scienter.

71.     Smith knew, or recklessly disregarded, when he made representations to investors, and clients of eGate, that Northstar securities sere safe and secure, and provided guaranteed interest payments, that such statements were false and misleading, and omitted material information.

72.     Smith knew, or recklessly disregarded, when he made representations to investors or clients about Northstar securities, that he was operating a Ponzi scheme, he was using money from new investors to make payments to earlier investors, and that Northstar was not purchasing any assets with investors' funds to provide funds for the interest payments or to repay principal.

73.     Smith knew, or recklessly disregarded, when he made representations to investors or clients about Northstar securities, that he was misrepresenting the investment and omitting material information concerning commingling funds between Northstar, Planning Services, and eGate.

74.     Smith knowingly generated monthly statements to Northstar investors showing a positive account value and interest earned.  Smith knew, or recklessly disregarded that he had no basis for the interest generated or the account value represented on the monthly statements given his Ponzi scheme activities and that Northstar had no assets.

75.     Smith knowingly failed to disclose his prior disciplinary history to investors, or was reckless in omitting this material information.

76.     In addition, Smith's conduct was negligent.  As an investment adviser and fiduciary, Smith's conduct was an extreme departure from the ordinary standard of care expected of a fiduciary.  Smith's conduct in offering and selling securities issued by Northstar, without disclosing that Northstar was a Ponzi scheme, that funds were being misused and misappropriated, and that he was providing false monthly statements to investors, was an extreme departure from the ordinary standard of care of a person offering and selling securities.

77.     Smith's state of mind is imputed to the companies he controlled, including Northstar, eGate, and Planning Services.

## FIRST CLAIM FOR RELIEF

**Fraud in the Connection with the Purchase and Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b)**

**(against Smith and Northstar)**

78.     The SEC realleges and incorporates by reference paragraphs 1 through 77 above.

79.     As set forth above, Defendants Smith and Northstar made several material misrepresentations, and omitted material information, to Northstar investors, including regarding the safety of their investment, the use of their funds, potential rates of investment returns, and Smith's qualifications.

80.     By engaging in the conduct described above, Defendants Smith and Northstar, directly or indirectly, in connection with the purchase or sale of a security, and by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, knowingly and recklessly, made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

81.     By engaging in the conduct described above, Defendants Smith and Northstar violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b) thereunder, 17 C.F.R. § 240.10b-5(b).

## SECOND CLAIM FOR RELIEF

**Fraud in Connection with the Purchase or Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c)**

**(against all Defendants)**

82.     The SEC realleges and incorporates by reference paragraphs 1 through 77 above.

83.     As set forth above, by perpetrating a Ponzi scheme, Defendants Smith,

Northstar, Planning Services, and eGate engaged in a scheme to defraud investors through the offer and sale of securities issued by Northstar.

84.    By engaging in the conduct described above, Defendants Smith, Northstar, Planning Services, and eGate, and each of them, directly or indirectly, in connection with the purchase or sale of a security, and by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, knowingly and recklessly:  (a) employed devices, schemes, or artifices to defraud; and (b) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

85.    By engaging in the conduct described above, Defendants Smith, Northstar, Planning Services, and eGate violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and 10b-5(c) thereunder, 17 C.F.R. §§ 240.10b-5(a) & 240.10b-5(c).

### THIRD CLAIM FOR RELIEF

**Fraud in the Offer or Sale of Securities**

**Violations of Section 17(a)(1) and 17(a)(3) of the Securities Act**

**(against all Defendants)**

86.    The SEC realleges and incorporates by reference paragraphs 1 through 77 above.

87.    By engaging in the conduct described above, Defendants Smith, Northstar, Planning Services, and eGate engaged in a scheme to defraud investors by falsely portraying Smith as a trusted adviser and a fiduciary, and Northstar as a safe and secure investment that provided guaranteed returns, when in fact the Defendants knew that Northstar was a Ponzi scheme.

88.    By engaging in the conduct described above, Defendant Smith, Northstar, Planning Services, and eGate, and each of them, directly or indirectly, in the offer or sale of securities, and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails directly or indirectly:

employed devices, schemes, or artifices to defraud; and engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

89.     Defendants Smith, Northstar, Planning Services, and eGate, with scienter, employed devices, schemes and artifice to defraud, and engaged in acts, practices, or courses of conduct that operated as a fraud by the conduct described in detail above.  In the alternative, Defendants Smith, Northstar, Planning Services, and eGate were negligent.

90.     By engaging in the conduct described above, Defendants Smith, Northstar, Planning Services, and eGate violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(1) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1) & 77q(a)(3).

## FOURTH CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities
### Violations of Sections 17(a)(2) of the Securities Act
### (against Defendants Smith and Northstar)

91.     The SEC realleges and incorporates by reference paragraphs 1 through 77 above.

92.     By engaging in the conduct described above, Defendants Smith and Northstar obtained money or property by means of false statements to investors in connection with the offer or sale of securities of Northstar, and omitted to disclose material information about Northstar and Smith.

93.     By engaging in the conduct described above, Defendants Smith and Northstar, directly or indirectly, in the offer or sale of securities, and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails directly or indirectly, obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they

were made, not misleading.

94. Defendants Smith and Northstar, with scienter, obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. In the alternative, Defendants Smith and Northstar were negligent.

95. By engaging in the conduct described above, Defendants Smith and Northstar violated, and unless restrained and enjoined will continue to violate, Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

## FIFTH CLAIM FOR RELIEF

### Fraud by an Investment Adviser

### Violations of Sections 206(1) and 206(2) of the Advisers Act

### (against Smith and eGate)

96. The SEC realleges and incorporates by reference paragraphs 1 through 77 above.

97. As set forth above, Smith and eGate acted as investment advisers for the clients of eGate. They received compensation in exchange for their investment advice. They defrauded, and continue to defraud, eGate and Northstar clients by making material misrepresentations regarding the use of funds, safety of the investment, potential rates of returns, the ability to withdraw funds at their request, and Smith's professional qualifications.

98. By engaging in the conduct described above, Defendants Smith and eGate, and each of them, directly or indirectly, by use of the mails or means and instrumentalities of interstate commerce, knowingly, recklessly and negligently: (a) employed or are employing devices, schemes or artifices to defraud clients or prospective clients; and (b) engaged in or are engaging in transactions, practices, or courses of business which operated as a fraud or deceit upon clients or prospective clients.

99.     By engaging in the conduct described above, Defendants Smith and eGate have violated, and unless restrained and enjoined, will to continue to violate, Sections 206(1) and (2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) & 80b-6(2).

### PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

### II.

Issue, in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order and an order to show cause why a preliminary injunction should not be entered, temporarily and preliminarily enjoining Defendants from violating Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], Section 17(a) of the Securities Act [15 U.S.C. §77q(a)], and Sections 206 (1) and (2) of the Advisers Act [15 U.S.C. §§ 15 U.S.C. § 80b-6(1) and 80b-6(2)], freezing the funds and assets of Defendants; prohibiting Defendants from destroying documents; ordering an accounting by Defendants; ordering expedited discovery; and appointing a temporary and permanent receiver over Northstar, Planning Services, and eGate

### III.

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining the Defendants, and their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], Section 17(a) of the Securities Act [15 U.S.C. §77q(a)], and Sections 206 (1) and (2) of the Advisers Act [15 U.S.C. §§ 15 U.S.C. § 80b-6(1) and 80b-6(2)].

**IV.**

Order Defendants to disgorge all funds received from their illegal conduct, together with prejudgment interest thereon.

**V.**

Order Defendants to pay civil penalties under Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 209(e)(1) of the Advisers Act [15 U.S.C. § 80b-9(e)(1)].

**VI.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

**VII.**

Grant such other and further relief as this Court may determine to be just and necessary.


Dated:  May 19, 2020

/s/David S. Brown
David S. Brown
Attorney for Plaintiff
Securities and Exchange Commission