JOHN B. BULGOZDY (Cal. Bar No. 219897)
Email: bulgozdyj@sec.gov
DAVID S. BROWN (Cal. Bar No. 134569)
Email: browndav@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
Amy Jane Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>          vs.<br><br>PAUL HORTON SMITH, SR.; NORTHSTAR COMMUNICATIONS, LLC; PLANNING SERVICES, INC.; AND EGATE, LLC,<br><br>                    Defendants. | Case No. 5:20-cv-01056-PA-SHK<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S NOTICE OF FILING RECEIVER'S FIRST REPORT AND RECOMMENDATIONS** |

TO THE CLERK OF THE COURT AND ALL PARTIES:

PLEASE TAKE NOTICE that Plaintiff Securities and Exchange Commission hereby submits the Receiver First Report and Recommendations in this action, a copy of which is attached as Exhibit 1.


Dated:  June 2, 2020                              Respectfully submitted,

*/s/ John B. Bulgozdy*
John B. Bulgozdy
David S. Brown
Attorneys for Plaintiff
Securities and Exchange Commission

1

## **PROOF OF SERVICE**

2

I am over the age of 18 years and not a party to this action.  My business address is:

3

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071

4

Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

5

On June 2, 2020, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S NOTICE OF FILING RECEIVER'S FIRST REPORT AND RECOMMENDATIONS** on all the parties

6

to this action addressed as stated on the attached service list:

7

☒    **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for

8

collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence

9

for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

10

☐    **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s),

11

which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class

12

postage thereon fully prepaid.

13

☐    **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility

14

regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

15

☐    **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

16

☐    **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated

17

by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at

18

Los Angeles, California.

19

☒    **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

20

☐    **E-FILING:**  By causing the document to be electronically filed via the Court's

21

CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

22

☐    **FAX:**  By transmitting the document by facsimile transmission.  The

23

transmission was reported as complete and without error.

24

I declare under penalty of perjury that the foregoing is true and correct.

25

Date:  June 2, 2020                    */s/ John B. Bulgozdy*

26

John B. Bulgozdy

27

28

2

1
2

*SEC v. Paul Horton Smith, Sr., et al.*
**United States District Court—Central District of California
Case No. 5:20-cv-01056-PA-SHK**

3

## SERVICE LIST

4

5

Paul Horton Smith Sr.

6

Moreno Valley, CA
Email:

7

***Pro Se***

8

9

Northstar Communications, LLC
c/o Paul Horton Smith, Sr.

10

3637 Arlington Avenue, Suite A100
Riverside, CA 92506

11

12

Planning Services, Inc.
c/o Paul Horton Smith, Sr.

13

3637 Arlington Avenue, Suite A100
Riverside, CA 92506

14

15

eGate, LLC
c/o Paul Horton Smith, Sr.

16

3637 Arlington Avenue, Suite A100
Riverside, CA 92506

17

18

Krista Freitag
E3 Advisors

19

355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Email: kfreitag@ethreeadvisorys.com

20

***Temporary Receiver for Defendants Northstar Communications, LLC,
Planning Services, Inc., and eGate, LLC***

21

22

23

24

25

26

27

28

3

# EXHIBIT 1

KRISTA FREITAG
E3 Realty Advisors, Inc.
Court-Appointed Temporary Receiver
355 S. Grand Avenue, Suite 2450
Los Angeles, CA  90071
Phone:  (213) 943-1374
E-Mail:  kfreitag@ethreeadvisors.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> PAUL HORTON SMITH, SR; NORTHSTAR COMMUNICATIONS, LLC; PLANNING SERVICES, INC.; AND EGATE, LLC, <br><br> Defendants. | Case No. ED CV 20-1056 PA (SHKx) <br><br> **RECEIVER'S FIRST REPORT AND RECOMMENDATIONS** <br><br> Date:     June 3, 2020 <br> Time:    1:30 p.m. <br> Judge:  Hon. Percy Anderson |

By order of this Court, on March 20, 2020, Krista Freitag ("Receiver") was appointed temporary receiver for Defendants Northstar Communications, LLC, Planning Services, Inc., and eGate, LLC, and their subsidiaries and affiliates (collectively, the "Receivership Entities"), with full powers of an equity receiver, including, but not limited to, full power over all funds, assets, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers and other property belonging to, being managed by or in the possession of or control of the Receivership Entities, and was immediately authorized, empowered and directed to take certain actions as set forth in the Temporary Restraining Order and Order to Show Cause Why A Preliminary

Exhibit 1 Page 4

Injunction Should Note Be Granted (the "TRO").  Dkt. 14.  The following reflects the Receiver's preliminary observations, report of work performed thus far pursuant to the TRO, and initial recommendations.

Pursuant to the TRO and law governing federal equity receivers, the Receiver has been charged with, among other things, (1) assuming control over the Receivership Entities and their assets ("Receivership Assets"), and (2) investigating, locating, and recovering Receivership Assets.  On May 21, 2020, the Receiver took possession of the Receivership Entities' office premises located at 3637 Arlington Ave., Suite A, Riverside, California, and personally served Defendant Paul Horton Smith, Sr. ("Smith") with a copy of the TRO and a request for documents relating to the Receivership Entities, a copy of which is attached hereto as **Exhibit A**, as amended and subsequently emailed to Smith.  Prior to the Receiver's entry onto the premises, the United States Federal Bureau of Investigation ("FBI") executed an arrest warrant on Smith and concurrently executed a search warrant on the office premises pursuant to the United States Attorney's criminal case No. 5:20-mj-00269-DUTY captioned USA v. Paul Horton Smith, Sr.  Pursuant to the search warrant, the FBI took possession of various records and all computer equipment located at the office premises.

The Receiver has obtained confirmation of the Court's freeze of certain Receivership Entity bank accounts which contain a total of approximately $210,000,[1] and has successfully obtained control over certain personal property, documents and records.  The Receiver has been in contact with the FBI and hopes to soon gain access to the electronic data and records of the Receivership Entities that were seized, but at this time her document recovery and analysis efforts are incomplete and preliminary for the reasons set forth herein.

---

[1] $200,000 appears to represent funds from one investor paid to Northstar Communications and deposited on May 20, 2020.

Exhibit 1 Page 5

Due to the short amount of time between the TRO and the date of this Report, and the limited information available to the Receiver to date, this Report is preliminary.  While Receivership Assets appear to be very limited at this time, there is some indication of prospective avenues of recovery for the benefit of investors, which the Receiver believes warrant limited additional, narrowly-focused investigation.  In Section IV, the Receiver has set out her recommendations for proceeding if the receivership is to continue.

## I.  EXECUTIVE SUMMARY

The Receivership Entities' business involved investment advisory, insurance agency, tax preparation coordination and related services for what appears to be hundreds of clients.  Based on the Receiver's review of records to date and Smith's representation, a comprehensive database of <u>active</u> investment advisory, insurance agency and tax clients and/or investor information does not exist. Thus, the Receiver has not yet been able to identify the entire scope or details associated with the Receivership Entities' clients and/or investors.  The Receiver has been able to take control of a Customer Relationship Management (CRM) software database, but it does not make clear who is an <u>active</u> client or investor of the Receivership Entities (there are over 2,700 contacts in this CRM database), and does not reflect their, (a) amounts invested, expended or received, (b) insurance policy details, or (c) investment account details.  Per Smith, there are approximately 110 investment advisory clients and 800-900 insurance agency clients; however, the Receiver has not yet been able to confirm these numbers. Also, Smith has reportedly not provided his Court ordered accounting, which would be a helpful tool in understanding the assets of the enterprise.

As discussed in Section IV below, the Receiver believes the receivership should continue with a very limited, narrow scope primarily to further investigate

Exhibit 1 Page 6

1  the prospective recovery of assets of the Receivership Entities for the benefit of the

2  investors of the alleged scheme.

3

4  ## II. RECEIVER'S ACTIONS TO IMPLEMENT TRO

5  **A. Office Premises.**

6        On May 21, 2020, the Receiver temporarily assumed control over the

7  operations controlled by Smith and the premises leased by the Receivership Entities;

8  which premises were secured and locks changed.  The Receiver had a change of

9  address completed for the premises as well as a PO Box address found on a

10  Northstar Communications related document.

11  **B. Funds Identified To Date.**

12        As noted above, the Receiver has received confirmation of the Court's asset

13  freeze and the existence of approximately $210,000 in Receivership Entities' bank

14  accounts.  Attached hereto as **Exhibit B** is a chart reflecting all of the accounts

15  identified by the SEC and the Receiver, the status of each account, and the balance

16  found in each account.

17  **C. Control Over Computer Hardware, Software and Documents.**

18        Promptly upon her appointment, in addition to taking control of the subject

19  premises, the Receiver worked in concert with the FBI to take control over computer

20  hardware, software and documents in order to preserve all e-mails, documents, and

21  accounting information maintained on the devices.  As previously mentioned, the

22  Receiver expects to obtain copies of the forensic images of the computers and other

23  electronic devices, as well as the actual physical devices, from the FBI in the next

24  week or two.  The Receiver was able to promptly take control over the Receivership

25  Entities CRM, website domain and e-mail host sites, including a Google account.

26        As part of her effort to preserve the electronic and hard copy documents

27  associated with the Receivership Entities, the Receiver also served the known

28  attorneys, accountants, certain vendors, insurance companies, financial advisory

Exhibit 1 Page 7

firms, agencies and other third parties with copies of the TRO.  Certain of these communications made a demand for client and contract details associated with the Receivership Entities (e.g., Formula Folios, an investment advisory management firm) and others made a demand that each of these parties preserve all electronic and other documents in their possession, custody or control as provided for in the TRO (e.g., CRM provider).

**D. Interviews with Employees, Assessing Business Operations.**

While taking control over the above-described premises, the Receiver met with and interviewed one employee and Smith.  One other person believed to assist Smith - purportedly Smith's daughter - was not at the office that day.  The Receiver reached out to ask her to come to the office via voicemail, but did not hear back. The one employee the Receiver was able to interview, the executive assistant employed for approximately nine months, made it clear that the operations were primarily controlled by Smith, with the assistance of his daughter.

The interview with Smith was intended to explain and encourage him to thoroughly review the TRO as well as to review the requested items on Exhibit A – primarily focused on reviewing the Receivership Entities' past and present operations, as well as identifying and addressing the prospective assets of the Receivership Entities.  This interview was limited in time to approximately 45 minutes, but some helpful information was obtained – e.g., the CRM software explanation, online banking security information, and a possible E&O insurance policy (confirmed to exist as of the date of this report).  Some of Smith's answers, however, were quickly found to be untrue.  When specifically asked about (1) the accounting software system and access thereto, (2) other addresses for the Receivership Entities, and (3) other storage locations, Smith unequivocally answered there were none.  He also would not discuss Northstar Communications and provided a name and a phone number of his purported counsel, from whom the Receiver has not heard.

Exhibit 1 Page 8

The Receiver subsequently located numerous accounting related reports she recognized as Quickbooks reports, as well as a login information therefor.  She also located invoices for two storage locations (in the name of Planning Services, Inc.) and a PO Box associated with Northstar Communications.

Smith also confirmed the existence of an investment advisory management company, Formula Folios.  He stated that he handled very few trades or cashiering requests from clients, and while some online access (primarily through Formula Folios) exists for certain of the investment advisory clients, there was not a database for the insurance (or tax) clients.  Given this information, in the face of limited funds and the observation of numerous invoices reflecting past due expenses, the Receiver took prompt steps to temporarily suspend operations and provide guidance on voicemail for clients to contact their insurance carriers or investment account custodians directly.

**E. <u>Affiliated Entity.</u>**

Smith is sole member of an affiliated entity, IE Tax, LLC.  Several bank accounts associated with this entity were identified and the applicable bank(s) served with a copy of the TRO demanding the accounts be immediately frozen.

**F. <u>Personal Property.</u>**

The Receiver has secured some personal property – primarily artwork – which appears to potentially be worth several thousand dollars.  She has enlisted the assistance of an art appraiser to help value same.  Through her investigation and document review, she also located two potential storage facilities (one a 21' foot container) under the name of Planning Services, Inc.  She attempted to locate the container, pursuant to the address (a vacant lot) on an invoice for same, but the address was a single-family home.  Upon pressing Smith for the location of this container, he explained that he is allowing "a friend who lost his home to store his belongings" in the container.  After repeated requests, he has now provided an

Exhibit 1 Page 9

1  explanation and contact information for the noted friend, and the Receiver is
2  following up on this information..

3      The second storage facility has been confirmed to be overlocked and the
4  Receiver has now been granted access to review its contents – such review is to set
5  to occur in the coming days.

6  **G. Investor Communications.**

7      The Receiver has established a dedicated web page which has been used to
8  make case information easily accessible to clients and/or investors.  The Internet
9  address for the webpage is as follows:  www.northstarreceivership.com.  In addition,
10  the Receiver is maintaining a dedicated e-mail address and telephone line for
11  investor inquiries.  While answers to various questions already posed by clients or
12  investors are not yet available in this case, the Receiver has attempted to respond to
13  client and investor correspondence to acknowledge receipt of their correspondence
14  and to encourage them to register on the website above in order to receive updates.

15      With limited information in the CRM database about the Receivership
16  Estate's investment advisors, insurance agency, and tax clients and/or investors, the
17  Receiver has worked diligently to identify and obtain active client and investor
18  contact information and investment/insurance policy/services details.  A list of (112)
19  clients managed by Formula Folios has been obtained; the Receiver is working on
20  obtaining contact information therefor.  Additionally, based upon email addresses
21  included in the CRM software and in order to disseminate a notice in a cost-
22  effective manner, the Receiver sent an email to approximately 900 email addresses
23  (as previously noted, there are over 2,700 contacts in the CRM database).

24
25
26
27
28

Exhibit 1 Page 10

### III.   PENDING LITIGATION

In February 2020, the California Department of Business Oversight filed suit against eGate, LLC and Paul Horton Smith, Sr.  The Receiver is in touch with counsel representing the defendants in the case[2] and has noticed the Department of Business Oversight's attorneys as well.  The Receiver is advised of two other pending client/investor actions, and is attempting to obtain files from the attorney Smith provided as the contact for the defendant(s) in those matters; this attorney has not yet responded to the Receiver's preservation and demand for records letter.

### IV.   PRELIMINARY RECOMMENDATIONS

The Receiver's efforts to marshal relevant Receivership Entity documents and records and investigate assets for recovery for the benefit of victims in the alleged scheme are ongoing.  Through the end of May 2020, the Receiver and her staff have expended approximately 86 hours at an average hourly rate of $256 and $393 in direct costs (e.g., locksmiths) discharging her duties as discussed herein; the Receiver intends to continue to work as efficiently as possible to execute the duties as recommended below.

In light of what appears to be very limited Receivership Assets at this time, the Receiver recommends and proposes (a) she be appointed as permanent receiver with a narrow, limited scope of work as presented in Sections IV (A-E) below, (b) she be authorized to engage receivership counsel to assist her in this scope, with a budget not to exceed $15,000, and (c) she file a further report to reflect her limited scope findings within 75 days.

**A.**     **Document Gathering and Asset Investigation Efforts.**

With the goal of identifying any additional cash recoveries, through financial institutions, unused retainers, and prospective insurance policy claims (e.g., E&O

---

[2] This attorney has reached out to the Receiver to confirm he has effectively frozen his unused retainer, but that it is less than $5,000.

Exhibit 1 Page 11

policy), the Receiver will continue to obtain records from all financial institutions where the Receivership Entities maintained accounts as well as from attorneys and accountants engaged by the Receivership Entities, and insurance companies.  This may include, where appropriate and with the assistance of counsel, issuing subpoenas to financial institutions and other third parties.

The Receiver will obtain valuation estimates on the personal property and continue to research prospective real property assets (e.g., the Receiver has identified a real property on which Smith appears to have a mortgage; however, he is not on title therefor).  If assets are identified that are located in other judicial districts, the Receiver will, with the assistance of counsel, file the TRO (or Preliminary Injunction Order if issued by the Court) in those jurisdictions pursuant to 28 U.S.C.§ 754.

**B.**    <u>**Accounting.**</u>

With the goal of attempting to efficiently identify any investors who received substantial profits from the alleged scheme (which amounts would likely be subject to disgorgement), the Receiver will review and analyze accounting and bank records, as they are obtained or become available.

Because it is uncertain whether or not there are, (a) assets sufficient to ultimately make a distribution to investors, or (b) whether the preparation of an accounting is either affordable or warranted at this time, the Receiver intends to make recommendations concerning an accounting and the costs and benefits thereof in the follow-on report proposed above.

**C.**    <u>**Investigation of Potential Third-Party Claims.**</u>

With the goal of potentially pursuing professional liability claims, the Receiver also recommends reviewing the coverage details of the E&O policy and investigating whether there are third parties who aided Smith in connection with the alleged scheme.  In addition, the Receiver will investigate the possibility of insurance coverage, such as insurance covering the actions of directors and officers,

Exhibit 1 Page 12

1   which may provide a source of recovery. As part of her investigation, the Receiver

2   will likely need assistance from counsel to evaluate whether such third parties are

3   potentially be liable for damages caused to the Receivership Entities and their

4   investors as well as assessing insurance coverage issues.

5   **D.      Other Legal Counsel Assistance.**

6          The Receiver will also need assistance from counsel in filing the schedule of

7   known creditors (assuming such information can be obtained from available

8   records) pursuant to Civil Local Rule 66-5.

9   **E.      Identify Investors and Propose Methods to Disseminate Information.**

10         The Receiver will continue to gather information and identify the clients and

11  investors of the Receivership Entities, so to enable direct and concise

12  communication and to provide time for clients to transition their accounts to other

13  investment advisors or insurance agencies, if they so desire.

14

15                              **V. CONCLUSION**

16         Based upon the Receiver's preliminary investigation and findings, the

17  Receiver recommends and requests that the Court order the receivership to continue.

18  The Receiver also requests the Court authorize her continued <u>narrow</u> investigation

19  as proposed herein, authorize her to engage counsel with a limited budget not to

20  exceed $15,000 without further order of the Court, and approve this first report and

21  recommendations.

22

23
    Dated:  June 1, 2020

24                                   KRISTA L. FREITAG
                                     Temporary Receiver
25

26

27

28

-10-                                            Exhibit 1 Page 13

# EXHIBIT A

Exhibit 1 Page 14



May 21, 2020

Mr. Paul H. Smith, Sr.                                      via Email and/or Hand Delivery
3637 Arlington Ave Ste A
Riverside CA  92506

**Re:  SEC v. Northstar Communications, LLC, et. Al.**

Dear Mr. Smith:

Pursuant to the enclosed Court Order entered on May 20, 2020 by the United States District
Court, Central District of California, Case No. ED CV 20-1056 PA (SHKx), I was appointed
temporary receiver for Northstar Communications, LLC, Planning Services, Inc., and eGate, LLC,
and their subsidiaries and affiliates (collectively, the "Entities").

In order for me to perform my duties as temporary receiver and protect the value of the
Entities and their assets, it is critical that I have prompt access to documents and information
related to the businesses.  I, therefore, request that you, with assistance from personnel of the
Entities or anyone who has access to relevant documents, provide the documents and
information listed below as quickly as possible.  I would appreciate the opportunity to meet in
person to go through these requests along with the entities, their operations and assets.

Please note that these requests are in addition to the specific deliverables ordered by the Court
in the Court Order.

1)   All Bank/Financial Institution/Brokerage Information - including contact
     information for each - for all accounts held by or for, or associated with or for
     the benefit of the Entities or their clients, to include:
   a.  Bank/Institution name/account numbers/account names/account
       holder/relationship (e.g., Trustee)/*online username and password, for*
         i.   operating accounts
         ii.  savings accounts
         iii. certificates of deposit
         iv.  brokerage accounts
         v.   reserve accounts – (e.g., payment processors)
         vi.  restricted funds accounts
         vii. escrow accounts
        viii. lines of credit
         ix.  security deposits (e.g., lease)



       x.  safe deposit boxes held by, or for the benefit of the Entities, including all original access keys and information

      xi.  petty cash held by the Entities, as applicable

     xii.  merchant and other non-cash payment accounts, as applicable
- 1. Include detailed account information for all non-cash payment processors, (e.g., PayPal, Zelle, credit card/merchant account) account numbers, online username/password and contact information

  b.  Account Signor/Owner information

  c.  Listing of company credit cards and debit cards
- i. Include who has access, possession, authority

  d.  Listing of current checks outstanding on all accounts

  e.  Listing of all open orders on all accounts

2)  A detailed and complete schedule of *all* website domains, social media platforms, cloud storage, phone systems, and email servers/accounts owned or used in connection with the Entities.

  a.  Include usernames/passwords for all accounts

  b.  Include, at a minimum, hosts (include all agents with access to domains), server locations, and identification numbers for all accounts of the Entities.

  c.  Include contact for who maintains websites and social media platforms

3)  A detailed and complete schedule of, and access to *all* desktop computers, laptop computers, servers (including electronic backup thereof), personal digital assistants, or smartphones owned and/or used in connection with the Entities (including computers or other devices kept at home or outside the Entity offices that contain data related to Entity business or clients).

  a.  Include, at a minimum, the location of each piece of equipment, the make, model and description of each piece of equipment and the person primarily assigned to each piece of equipment.

  b.  Include all passwords necessary to access each piece of equipment.

4)  A detailed and complete schedule of any/all offices, offsite storage and/or personal storage facilities owned or used in connection with the Entities, for any purpose, including an inventory of records and personal property located at each office and storage location (including any home offices or home storage used to conduct Entity business or maintain Entity records).

5)  Listing of any PO Box or other mailing addresses associated with the Entities.

6)  A comprehensive list of all Insurance Policy information associated with the Entities

  a.  Include Worker's compensation, EPLI policy information, E&O, D&O, GL, Property, Umbrella/Excess, etc.
- i. Include Broker contact information

E3 Advisors
501 West Broadway, Suite 290, San Diego, CA 92101
355 S. Grand Avenue, Suite 2450, Los Angeles, CA 90071
ethreeadvisors.com

Exhibit 1 Page 16



    b. Include list of policies brokered for clients
       i. Include Underwriter contact information
    c. Include copies of policies and certificates of insurance, payment status and effective dates
    d. Any imminent renewals, uninsured issues, beneficiary issues?

7) An Organizational Chart for all operating businesses and assets (include IP, licenses) owned by or otherwise associated with the Entities.
    a. Include details re: ownership status and encumbrances thereon (e.g., loans, leases (as lessor and lessee, litigation, partnership interests (other investors), etc.)
       i. Include copies of leases (real or personal property), landlord contact information, lessee contact information, as applicable.
       ii. Include any/all documentation and information re: partners or investors in the operating businesses

8) An Organizational Chart for Personnel - all Entities' payroll and contract employee records
    a. Listing of and who has access to keys
    b. Include all files, including employment contracts, job descriptions, accrued payroll liabilities (vacation, bonuses, sick pay, etc.) and applications
    c. Include payroll timing (e.g., payment dates and periods earned) – include next payroll
    d. Include payroll processor information with contacts, if applicable
    e. Include employee contact information
    f. Include current payroll register

9) A complete list of Clients and/or Investors, including all contact information and investment details
    a. Include contracts, statements, reports and/or reporting requirements
    b. Include list of all relevant data for any Trustee relationships

10) Calendar of Events
    a. Any deposits or contracts pending with venues?

11) Current Inventory of all real and personal property, including equipment, furniture, fixtures
    a. Include Tax Parcel Number and address for all real property
    b. Include computer equipment, software, point of sale systems, reservations systems, management files, equipment, furniture, supplies,
    c. Include all usernames/passwords needed to access all
    d. Include notes on whether equipment is owned or leased

12) A detailed list of all Entities' professional relationships
    a. Include details and contact information for all tax accountants, affiliated brokers, attorneys, etc.

E3 Advisors
501 West Broadway, Suite 290, San Diego, CA  92101
355 S. Grand Avenue, Suite 2450, Los Angeles, CA  90071
ethreeadvisors.com

Exhibit 1 Page 17



13) Tax Identification Numbers and organizational documents for the Entities, *including all successors in interest, subsidiaries, affiliates and assigns.*
   a. Include Organizational Chart for Entities
   b. Include status and copies of income tax returns for 2018, 2019 and prior years
14) All Entity financial information & access to accounting and brokerage account systems and software.
   a. Provide all applicable prior year and YTD 2019 financial packages
   b. Any other applicable information, including electronic access to all software and systems, with usernames and passwords
   c. Confirm fiscal year
15) All Entities' accounts payable/vendor information and creditor documentation
   a. Provide current accounts payable aging and all *outstanding* bills/invoices
   b. Provide information on current accounts payable process and internal controls
   c. Provide a vendor/creditor listing & contact information (excel format)
16) All licenses/permits documentation associated with the Entities' operations
17) All documentation and protocol regarding any consumer or authority complaints.
18) All documentation regarding any present, pending, or contemplated litigation relating to the Entities.
   a. Documentation or other materials relating to any disputes with state or local authorities

This list is intended to be supplemented, as necessary.  Should you have any questions, please do not hesitate to contact me at (619) 316-9911 or at kfreitag@ethreeadvisors.com.

Sincerely,

Krista Freitag
Court-Appointed Temporary Receiver
United States District Court, Central District of California
Case No. ED CV 20-1056 PA (SHKx)

Enclosure

CC:   John Bulgozdy, Esq. (via email)
      David Brown, Esq. (via email)

E3 Advisors
501 West Broadway, Suite 290, San Diego, CA  92101
355 S. Grand Avenue, Suite 2450, Los Angeles, CA  90071
ethreeadvisors.com

Exhibit 1 Page 18

# EXHIBIT B

Exhibit 1 Page 19

|  | BANK | ENTITY | ACCOUNT NUMBER | Balance |
|---|---|---|---|---|
| On Order | BBVA USA | Northstar Communications LLC | xxx7020 | $ 200,078.19 |
| On Order | BBVA USA | Planning Services, Inc. | xxx3562 | account closed |
| On Order | BBVA USA | Planning Services, Inc. | xxx7012 | $ 2,305.87 |
| On Order | Charles Schwab | Northstar Communications LLC | xxx7268 | $ 410.64 |
| On Order | TD Ameritrade | Paul H. Smith | xxx0415 | $ 331.12 |
| On Order | TD Ameritrade | Northstar Communications LLC | xxx1749 | $ 409.84 |
| On Order | TD Ameritrade | Paul H Smith Sr Trustee Fbo Northstar Communications LLC Pft Sharing | xxx6179 | $ 5,932.19 |
| On Order | TD Ameritrade | eGate, LLC | xxx9625 | account closed |
| On Order | TD Ameritrade | eGate, LLC | xxx1874 | account closed |
| On Order | Interactive Brokers | eGate, LLC | xxx8528 | $ 87.99 |
| On Order | Provident Bank | eGate, LLC | xxx4362 | $ 13.10 |
| On Order | Provident Bank | Northstar Communications LLC | xxx7380 | account closed |
| On Order | Provident Bank | Planning Services, Inc. | xxx7330 | account closed |
| On Order | C3bank | Planning Services, Inc. | xxx3847 | $ 40.79 |
| On Order | Wells Fargo Bank | Paul Smith | xxx5594 | $ 723.81 |
| Not On Order | BBVA USA | IE Tax LLC | xxx6314 | awaiting response |
| Not On Order | Provident Bank | IE Tax LLC | xxx8620 | account closed |
|  |  | TOTAL |  | $ 210,333.54 |
|  |  |  |  |  |

Exhibit 1 Page 20