UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-1056 PA (SHKx) | Date | October 19, 2020 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Paul Horton Smith et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Gabriela Garcia | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS - COURT ORDER

Before the Court is a Motion for Default Judgment filed by plaintiff Securities and Exchange Commission ("SEC" or "Plaintiff") against defendants Paul Horton Smith, Sr., Northstar Communications, LLC, Planning Services, Inc., and eGate, LLC ("Defendants"). (Dkt. 60.) Defendants have not filed an Opposition, and the SEC has filed a Reply. (Dkt. 62.) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.

**I.      Background**

Paul Horton Smith, Sr. is a California-registered investment adviser representative who operated several businesses out of a single office in Riverside, California: (1) Planning Services, which purported to provide a variety of planning services to pre-retirees and retirees, including investment, tax, and income planning; (2) eGate, which was a California state-registered investment adviser; and (3) Northstar, which purported to be a private annuity contracts company. Smith offered and sold fictitious securities called "private annuity contracts" in his company Northstar to elderly individuals and retirees living in Riverside and San Bernardino counties. Smith coordinated this scheme in conjunction with his state-registered investment advisory firm, eGate, and his insurance and estate planning company, Planning Services. Defendants told individuals they were making a safe and secure investment that would provide superior returns. For example, Defendants guaranteed annual interest payments between 3 and 10.5 percent. In reality, however, Defendants were orchestrating a Ponzi scheme in which they used money from new investors to pay returns to earlier investors. Northstar did not purchase any assets to generate revenue. From January 2018 through April 2020, Smith and Northstar sold more than $5.6 million in securities to approximately 35 investors.

On May 19, 2020, the SEC filed a Complaint against Defendants for (1) fraud in connection with the purchase and sale of securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5(b), (2) fraud in connection with the purchase or sale of securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c), (3) fraud in the offer or sale of securities in violation of Section 17(a)(1) and 17(a)(3) of the Securities Act, (4) fraud in the offer or sale of securities in violation

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-1056 PA (SHKx) | Date | October 19, 2020 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Paul Horton Smith et al. | | |

of Section 17(a)(2) of the Securities Act, and (5) fraud by an investment adviser in violation of Sections 206(1) and 206(2) of the Advisers Act. On May 20, 2020, the Court granted the SEC's application for a Temporary Restraining Order and issued orders freezing Defendants' assets, prohibiting the destruction or alteration of documents, requiring an accounting, and appointing a temporary receiver over Northstar, Planning Services, and eGate. On June 2, 2020, the Court granted the SEC's application for a Preliminary Injunction. (Dkt. Nos. 25 and 26.) On June 12, 2020, the Court appointed a permanent receiver with limited powers over the entities. (Dkt. 35.) The SEC now moves for default judgment against Defendants. The SEC has served all Defendants with the Summons and Complaint, and the Clerk has entered default against all Defendants. (Dkts. 16-19, 45, 58.) The SEC provided notice of this motion to Defendants. (Bulgozdy Decl. ¶¶11-13.) And the SEC has demonstrated that Defendants are not minors, are not incompetent, and are not in the military or otherwise exempt under the Soldiers' and Sailors' Civil Relief Act of 1940. (Id. at ¶¶14, 15.)

**II. Discussion**

Federal Rule of Civil Procedure 55(b)(2) grants the Court the power to enter a default judgment. The Court need not make detailed findings of fact in the event of a default judgment. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990). The general rule is that upon entry of a default, well-pleaded allegations in the complaint regarding liability are deemed true. Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977). Factors the Court should consider in evaluating a motion for entry of default judgment include: "(1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The Court finds that these factors weigh in favor of granting the SEC's motion. In light of the well-pleaded allegations in the Complaint, as well as the failure of Defendants to respond, the SEC's interest in an efficient resolution of this case outweighs Defendants' interest in adjudication on the merits. See PepsiCo v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible. Under Fed. R. Civ. P 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action.").

The SEC seeks a final judgment against Defendants that will: (1) permanently enjoin and restrain them from violating the anti-fraud provisions; (2) order Defendants to pay jointly and severally disgorgement equal to their ill-gotten gains of $4,238,400.50, together with prejudgment interest thereon of $383,059.00; and (3) order Smith to pay a one-time, third-tier statutory penalty of $4,238,400.50 for his violations of the securities laws. Regarding the issuance of a permanent injunction, Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d)(1), provide that upon proper showing, a permanent injunction shall be granted in an enforcement action

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-1056 PA (SHKx) | Date | October 19, 2020 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Paul Horton Smith et al. | | |

brought by the SEC. "In order to obtain a permanent injunction, the SEC had the burden of showing there is a reasonable likelihood of future violations of the securities laws." See SEC v. Murphy, 626 F.2d 633, 655 (9th Cir.1980). "The existence of past violations may give rise to an inference that there will be future violations; and the fact that the defendant is currently complying with the securities laws does not preclude an injunction." Id. In predicting the likelihood of future violations, a court must assess the totality of the circumstances surrounding the defendant and his violations, and it considers factors such as: (1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the likelihood, because of the defendant's professional occupation, that future violations might occur; and (5) the sincerity of the defendant's assurances against future violations. Id.

The Court finds a reasonable likelihood exists that, absent a permanent injunction, Defendants may violate the federal securities laws. Smith has a history of violating securities laws and was engaged in an ongoing Ponzi at the time the SEC's Complaint was filed. The Court has already issued a temporary restraining order, and a preliminary injunction, enjoining Defendants from violating the federal securities laws. (Dkts. 14, 25, 26.) Smith has failed to acknowledge his wrongdoing or provide any assurances against future violations. Under the totality of circumstances, a permanent injunction against all Defendants is necessary to protect the public. See SEC v. Baccam, et al., 2017 WL 5952168, at *9 (9th Cir. June 14, 2017) (awarding injunctive relief by default, noting that the defendant "has not given any assurances against future violations, but to the contrary, declined to appear in this case").

The Court also finds that the SEC has carried its burden in establishing that the proposed ill-gotten gains of $4,238,400.50 is a reasonable approximation of Defendants' net profits that are causally connected to their securities law violations. "District courts have broad equity powers to order disgorgement of ill-gotten gains obtained through violations of securities laws." SEC v. Lyndon, 39 F. Supp. 3d 1113, 1120 (D. Hawaii 2014) (citing SEC v. JT Wallenbrock & Assocs., 440 F.3d 1109, 1113 (9th Cir. 2006)). The Supreme Court has held that "a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under [15 U.S.C.] § 78u(d)(5)." Liu v. SEC, 140 S. Ct. 1936, 1940 (2020); see also SEC v. Janus Spectrum LLC, 2020 U.S. App. LEXIS 20710, at *3 (9th Cir. July 1, 2020). "Disgorgement need be 'only a reasonable approximation of profits causally connected to the violation.'" SEC v. Platforms Wireless Int'l Corp., 617 F.3d 1072, 1096 (9th Cir. 2010) (citation omitted).

The SEC has reviewed the relevant Northstar bank records for the period of January 2018 to April 2020 and determined that Smith received approximately $5,642,182.03 in cash deposits/transfers from approximately 35 individuals, and made disbursements to them totaling $1,403,781.53. (Zaldivar Decl. ¶¶3-4.) Thus, Defendants obtained approximately $4,238,400.50 in net profits ($5,642,182.03 in cash deposits from individuals – $1,403,781.53 in cash paid to individuals who made deposits). (Id. at ¶6.) The SEC seeks to return these funds to the 35 victims who lost significant sums of money from Defendants' fraudulent scheme. Based on the records available to the SEC, it was not able to identify any legitimate, reasonable business expenses that should be deducted from the calculated net loss. (Id. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-1056 PA (SHKx) | Date | October 19, 2020 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Paul Horton Smith et al. | | |

¶8.)  For these reasons, the Court hereby orders Defendants to disgorge $4,238,400.50 in ill-gotten gains.[1/]

Defendants shall be held jointly and severally liable for disgorgement because they acted in concert to perpetrate the fraudulent scheme.  "[T]he imposition of joint and several liability for a disgorgement award is permissible so long as it is 'consistent with equitable principles.'"  Janus Spectrum LLC, 2020 WL 3578077, at *2 (quoting Liu, 140 S. Ct. at 1949).  Smith exercised common control over Northstar, Planning Services, and eGate.  He used his ownership and common control of Planning Services and eGate to present the false impression that he was offering legitimate legal, tax, insurance, and financial services.  Defendants then solicited and sold investors fictitious securities in the Northstar Ponzi scheme, and Smith commingled Northstar investor funds among and between the Defendant entities to keep all the businesses operating.  Based on the Complaint allegations and evidence presented by the SEC, joint and several liability is appropriate here.  See SEC v. First Pac. Bancorp, 142 F.3d 1186, 1191-92 (9th Cir. 1998) ("[W]here two or more individuals or entities collaborate or have a close relationship in engaging in the violations of the securities laws, they have been held jointly and severally liable for the disgorgement of illegally obtained proceeds."); Liu, 140 S. Ct. at 1949 ("Petitioners did not introduce evidence to suggest . . . that their finances were not commingled, or that one spouse did not enjoy the fruits of the scheme, or that other circumstances would render a joint-and-several disgorgement order unjust.") (citation omitted).

In addition, the Court grants the SEC's request for prejudgment interest.  "The ill-gotten gains include prejudgment interest to ensure that the wrongdoer does not profit from the illegal activity."  SEC v. Cross Fin. Services, 908 F. Supp. 718, 726 (C.D. Cal. 1995).  In Platforms Wireless, the Ninth Circuit approved the calculation of prejudgment interest based on the tax underpayment rate set forth in 26 U.S.C. § 6621.  See 617 F.3d at 1099.  Here, the SEC calculated the amount of prejudgment interest using "the rate of interest that is used by the Internal Revenue Service for the underpayment of federal income tax, as set forth in 26 U.S.C. §6621(a)(2)." (Zaldivar Decl. ¶10.)  For these reasons, the Court orders that, in addition to disgorging $4,238,400.50, Defendants shall also pay prejudgment interest thereon from January 2018 through August 2020, which totals $383,059.00.  Therefore, the total amount of disgorgement and prejudgment interest that will be assessed jointly and severally against Defendants is $4,621,459.50.

Finally, the Court considers whether a civil penalty should be imposed against Smith.[2/]  The SEC requests that the Court impose a third-tier civil penalty on Smith of $4,238,400.50, which represents the

---

[1/]   The SEC proposes that any award of disgorgement and prejudgment interest by this Court be subject to offset by the amount of any restitution order subsequently entered in the parallel criminal case against Smith, U.S. v. Paul Horton Smith, Sr., CR 20-00120-JGB (C.D. Cal.).

[2/]   The SEC forgoes seeking a civil penalty against Northstar, Planning Services, and eGate because they were effectively Smith's alter egos.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-1056 PA (SHKx) | Date | October 19, 2020 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Paul Horton Smith et al. | | |

net profits from his illegal activities. The SEC may seek civil penalties for Defendants' violations of federal securities laws. See 15 U.S.C. § 77t(d)(2)(A) (providing that amount of any civil penalty "shall be determined by the court in light of the facts and circumstances"), 15 U.S. C. § 78u(d)(3)(B) (same). A third-tier penalty is proper where, as here, the violations: (1) involve fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement, and (2) directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons. See 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii).

Like permanent injunctions, civil penalties are imposed to deter the wrongdoer from similar conduct in the future, so courts frequently apply the Murphy factors discussed above when assessing civil penalties. See SEC v. Wilde, 2012 U.S. Dist. LEXIS 183252, at *16 (C.D. Cal. Dec. 17, 2012). "[B]ecause this factor test supported the imposition of a permanent injunction, it also supports the imposition of civil penalties." Id. Smith knowingly operated a Ponzi scheme that targeted vulnerable senior citizens, made blatantly false representations to his clients, and knowingly and repeatedly used client funds in direct conflict with the representations he made—all of which shows a high level of scienter. Smith has not provided any assurances against future violations, which is particularly concerning in light of his prior disciplinary history. Thus, under the facts and circumstances presented by the SEC, the Court finds that a third-tier penalty of $4,238,400.50 is necessary and appropriate. See SEC v. Souza, 2011 WL 2181365, at *3 (E.D. Cal. June 3, 2011) ("The court will recommend a civil penalty be imposed equal to the gross amount of pecuniary gain, i.e. the amount of disgorgement plus prejudgment interest, in order to adequately serve the deterrent function of the civil penalty provision.").

**Conclusion**

The Court grants the SEC's Motion for Default Judgment. The Court will issue a Judgment consistent with this order.

IT IS SO ORDERED.